UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALAN LAUFER,

|  |  |  |
|---|---|---|
|  | Plaintiff, | COMPLAINT |
| - against – |  |  |
| PRYOR CASHMAN, L.L.P. |  | PLAINTIFF DEMANDS A TRIAL BY JURY _____ |
|  | Defendant. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Alan Laufer ("plaintiff" or "Laufer") through his attorneys, Vladeck, Raskin, and Clark, P.C., complains of defendant Pryor Cashman, L.L.P. ("Pryor Cashman," the "Firm" or "defendant") as follows:

NATURE OF ACTION

1.      Laufer gave almost two decades of service to Pryor Cashman as an attorney in the Trust and Estates Department.  While the Firm went through numerous staffing changes and financial difficulties throughout Laufer's tenure, Laufer remained a committed and integral part of the trust and estates practice.  In his 18 years at Pryor Cashman, Laufer never received a negative performance review.  To the contrary, the Firm's partners regularly praised Laufer's work, and sought out his expertise.

2.      As Laufer approached 60, however, the Firm's treatment of him changed. Although the quality of his work remained constant, Laufer no longer received compensation in line with other associates.  Shortly after Laufer's 61st birthday, Pryor Cashman fired him.  Laufer was replaced days later by an associate in his early thirties.

1

3.      Plaintiff brings this action to remedy discrimination on the basis of age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law, Executive Law § 296 et seq. (the "Executive Law"); and the Administrative Code of New York § 8-101 et seq. (the "City Law").

JURISDICTION AND VENUE

4.      This Court has jurisdiction over plaintiff's ADEA claim under 28 U.S.C. §§ 1331. The Court has supplemental jurisdiction over Laufer's Executive Law and City Law claims under 28 U.S.C. § 1367 because these claims closely relate to the ADEA claim, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

5.      Venue is proper within this district pursuant to 28 U.S.C. § 1391, because defendant regularly does business within this district, and because a substantial part of the events or omissions giving rise to plaintiff's claims occurred within the Southern District of New York.

6.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Pryor Cashman on February 19, 2016 complaining of the acts of discrimination alleged herein.  On August 12, 2016, without making a determination, the EEOC issued plaintiff a notice of right to sue.  Plaintiff has complied fully with the administrative prerequisites of the ADEA.

7.      Pursuant to § 8-502(c) of the City Law, plaintiff shall cause a copy of this Complaint to be served on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

PARTIES

8.      Laufer is a 62 year-old lawyer who resides in New York.  He was employed by Pryor Cashman for 18 years.

2

9.      Pryor Cashman is a law firm based in New York.  It employs over 100 lawyers and approximately 100 staff members.  Pryor Cashman is an employer within the meaning of the ADEA, the Executive Law and the City Law.

FACTUAL ALLEGATIONS

Laufer's Background and Performance History

10.     In the summer of 1997, when Laufer was 43 years old, he began working at Pryor Cashman on a temporary basis in the Trusts and Estates Department, which is a subdivision of the Firm's Tax Department (presently the Firm's Tax and Private Client group).  Because he proved to be a capable attorney, he was hired for a permanent position as an associate in June 1998.

11.     Before Laufer's tenure at Pryor Cashman, he was a sole practitioner specializing in trusts and estates law, tax law, pension and retirement benefits law and public accounting.  He holds a J.D. degree and an L.L.M. degree in taxation.  He is a member of the New York Bar and a Certified Public Accountant in New York.

12.     With his experience in trusts and estates, Laufer took on responsibilities in all aspects of estate planning and administration, including litigation in Surrogate's Courts.  He also regularly advised on issues relating to charitable organizations, including representing these organizations before the Internal Revenue Service.

13.     During Laufer's entire tenure at Pryor Cashman, he was the only non-partner attorney in the Trusts and Estates Department.  He was also one of few associates over the age of 40 that the Firm retained.

3

14.     Throughout Laufer's time at Pryor Cashman, the management favored younger employees.   The younger associates received the most desirable assignments and were encouraged to develop relationships with Pryor Cashman's premier clients.

15.     Even though the Firm denied Laufer certain opportunities, however, senior partners valued Laufer's expertise and trusted him with sensitive matters.   For example, several partners asked Laufer to draft their personal wills and estate planning documents.

16.     David Rose ("Rose"), a Litigation Department partner in his mid-forties, who lead several high profile trusts and estates litigations, often consulted Laufer about practice in the Surrogate's Courts of New York State.

17.     During Laufer's tenure at Pryor Cashman, he was never given a formal evaluation. He received positive feedback from all partners who supervised his work and from many attorneys in other departments in the Firm with whom he worked directly on numerous matters.

18.     Laufer often worked late into the night and on weekends without being prompted, and always worked outside regular office hours when asked.

19.     Although associates were not required to solicit clients of their own, Laufer used his contacts in the trusts and estates sector to bring in a substantial amount of business for the Firm.   Upon information and belief, he generated more business for Pryor Cashman than most other associates did.

20.     Laufer also had billable hours commensurate with other attorneys in the Tax Department.   Due to the nature of the work in the trusts and estates sector, which is usually not a firm's largest or most profitable department but generates a steady stream of revenue, Laufer's annual billable hours were lower than those of associates working in the general litigation or

4

corporate groups.   Upon information and belief, these relative billing patterns are common among corporate law firms in New York.

21.   Throughout Laufer's tenure, no one ever raised an issue with him about his hours or any other aspect of his performance.

<u>Compensation at the Firm</u>

22.   Compensation for associates was determined on an ad hoc basis.   Salary appeared to be loosely based on what year the associate graduated from law school.   On various personnel documents, Laufer was deemed to be class of 1996, even though he graduated law school in 1978.   He was never formally or informally informed of this classification, how it was calculated or how it would affect his compensation.

23.   Like salary, bonuses were determined on an ad hoc basis, and depended mostly on subjective factors.   Younger associates received the overwhelming majority of the bonuses.

24.   Laufer's annual compensation upon becoming a permanent associate was $105,000.   Between 1998 and 2009, he received annual raises which, upon informal discussions with other associates, always appeared to be at the low end of the range for raises given.   His annual salary reached $196,000 for the first half of 2009, when he was 55 years old.

<u>Freezes in Compensation</u>

25.   In or around 2010, management began to view Laufer as too old for his job, and thus incongruous to the rest of the associate workforce.

26.   In July 2009, during the height of the financial crisis, Pryor Cashman cut the annual salary of all associates and of counsels by $10,000.   Laufer's annual compensation was then reduced from $196,000 to $186,000.

5

27.    After the economy began to recover in 2010, however, management informed associates and of counsels that salaries would be restored.  Upon information and belief, the pay cuts appeared to be lifted only for non-partner attorneys below 40 years of age.  Laufer and several of counsels over 40 years old did not receive a restoration of pay.

28.    From 2009 to 2014, Laufer received only one salary adjustment.  In January 2014, Laufer received a $4,000 annual increase to $190,000, approximately $6,000 below his annual salary before the July 2009 pay cut, despite numerous announcements by management that the Firm had met record revenues in each of the last several years of his employment.

<u>Laufer's Firing</u>

29.    On July 28, 2015, Laufer was fired.  Richard Kay ("Kay"), the head of the Trusts and Estates Department and Laufer's immediate supervisor during his entire tenure at Pryor Cashman, told him that the Firm "was going in a different direction."  Oris Diaz ("Diaz"), a Human Resources representative, was also present during the meeting.

30.    Kay stated that Laufer's dismissal had nothing to do with the quality of his work and that the Firm appreciated Laufer's service over the years.  Laufer's last day in the office was August 14, 2015.

31.    Later that day, Diaz sent a Notice of Termination to Laufer by email, copying Ron Shechtman ("Shechtman"), the managing partner of the Firm.

32.    On August 4, 2015, Eric Woldenberg ("Woldenberg"), head of the Tax Department, sent a Firm-wide email welcoming an associate who was in his early thirties and replaced Laufer as the sole non-partner attorney in the Trusts and Estates Department.

6

The Firm's Pattern of Age Discrimination

33.     As a firm excessively concerned with the optics of its workforce, Pryor Cashman

had a history of protecting younger employees at the expense of its older and minority staff.

34.     In or around June 2015, Pryor Cashman fired the only paralegal in the Corporate

Department, an employee of almost a decade, who was an African-American woman

approximately 55 years of age.  Pryor Cashman replaced the employee with a white woman who

is approximately 30 years of age.  Like Laufer, the paralegal was told that the Firm was "going in

a different direction" when she was fired.  Upon information and belief, Diaz was also present

for the meeting.

35.     As another example, in or around 2013, Pryor Cashman also reduced the

responsibilities of its Chief Financial Officer ("CFO"), who is approximately 64 years old.  The

employee had held the position for about 12 years when he was demoted to a lesser role with a

significant salary reduction.  Pryor Cashman hired a much younger man to replace him as CFO.

36.     Additionally, in or around 2012, Pryor Cashman fired an of counsel in the Tax

Department who was about 43 years old.  Although the attorney had been with the Firm for

almost 12 years, he was replaced by a man who appeared to be in his early thirties.

37.     In 2009, the Firm laid off a Real Estate Department associate who was

approximately 50 years old.  While Pryor Cashman told the associate that she was being fired

due to a decrease in the Firm's real estate business, the department retained its younger attorneys

in that sector.

38.     Upon information and belief, on or about June 23, 2016, Shechtman sent a Firm-

wide email announcing that non-partner attorneys would receive an across-the-board increase of

772168 v1

$20,000. The increase did not apply, however, to of counsels and associates not on the partner-track who are generally older than partner-track associates.

## FIRST CAUSE OF ACTION

### Age Discrimination Under the ADEA

39.     Plaintiff repeats and re-alleges paragraphs 1-38 above.

40.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his age in violation of the ADEA.

41.     Defendant knew that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights.  These violations were willful within the meaning of the ADEA.

42.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to his reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

### Age Discrimination Under the Executive Law

43.     Plaintiff repeats and re-alleges paragraphs 1-42 above.

44.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his age in violation of the Executive Law.

45.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to his reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

8

772168 v1

THIRD CAUSE OF ACTION

Age Discrimination Under the City Law

46.     Plaintiff repeats and re-alleges paragraphs 1-45 above.

47.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his age in violation of the City Law.

48.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation and damage to his reputation as a result of defendant's discriminatory practices unless and until this Court grants relief.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a Judgment:

(a)     Declaring that defendant's conduct complained of herein violates plaintiff's rights under the ADEA, the Executive Law, and the City Law;

(b)     Enjoining and permanently restraining defendant from violating the ADEA, the Executive Law, and the City Law;

(c)     Directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     Directing defendant to place plaintiff in the position he would have occupied but for defendant's discriminatory and retaliatory conduct and making him whole for all earnings and other benefits he would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages and other lost benefits;

9

(e)    Directing defendant to pay plaintiff compensatory damages for his mental anguish and humiliation;

(f)    Directing defendant to pay plaintiff liquidated damages under 29 U.S.C. § 626 of the ADEA;

(g)    Directing defendant to pay plaintiff punitive damages for its intentional disregard of and/or reckless indifference to plaintiff's statutory rights;

(h)    Directing defendant to pay reasonable attorneys' fees and costs;

(i)    Directing defendant to compensate plaintiff for any adverse tax consequences;

(j)    Directing defendant to pay prejudgment interest; and

(k)    Granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
      November 1, 2016

VLADECK, RASKIN & CLARK, P.C.

By: _____ (MQC)

Anne C. Vladeck
Ming-Qi Chu
Attorneys for Plaintiff
565 Fifth Avenue, 9th Floor
New York, New York  10017
(212) 403-7300

10