UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALAN LAUFER,

Plaintiff,

- against -

PRYOR CASHMAN LLP,

Defendant.

---

Case No. 1:16-cv-8487 (JPO) (DF)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT PRYOR CASHMAN LLP'S MOTION FOR SUMMARY JUDGMENT**

PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant Pryor Cashman LLP*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................... ii

PRELIMINARY STATEMENT ..................... 1

ARGUMENT ..................... 1

I. PLAINTIFF HAS FAILED TO SET FORTH SPECIFIC FACTS EVIDENCING A GENUINE ISSUE FOR TRIAL ..................... 1

A. Plaintiff's Immaterial And Unsupported Assertions Are Insufficient To Survive Summary Judgment ..................... 3

*i. Plaintiff's Subjective Evaluation Of His Performance Is Immaterial And Should Be Disregarded* ..................... 4

*ii. Plaintiff's Assertions Regarding His Alleged Discriminatory Treatment At The Hands Of The Firm Are Immaterial And Should Be Disregarded* ..................... 6

B. Plaintiff's Distortion Of The Record Does Not Create A Disputed Material Issue Of Fact ..................... 9

C. Defendant's Demographics Disprove Any Claim Of Age Discrimination ..................... 10

CONCLUSION ..................... 10

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Chapotkat v. Cty. of Rockland*,
No. 11-CV-6209 (NSR), 2014 WL 1373531 (S.D.N.Y. Apr. 4, 2014),
aff'd, 605 F. App'x 24 (2d Cir. 2015)....................9

*Cooper v. N.Y. Dep't of Labor*,
No. 14-CV-0717(GTS/CFH), 2015 WL 5918263 (N.D.N.Y. Oct. 9, 2015)....................4

*Desir v. Board of Co-op. Educ. Servs. (BOCES) Nassau County*,
803 F. Supp. 2d 168 (E.D.N.Y. 2011)....................5

*Duckett v. Foxx,*
No. 12-CV-5203 (NGG) (LB), 2015 WL 4911160 (E.D.N.Y. Aug. 17, 2015),
aff'd, 672 F. App'x 45 (2d Cir. 2016)....................9

*Ghent v. Moore*,
324 F. App'x. 55 (2d Cir. 2009) ....................4

*Ghorpade v. MetLife, Inc.*,
No. 14-CV-4379(JPO), 2016 WL 3951183 (S.D.N.Y. July 20, 2016)....................4

*Hauptman v. Concord Fabrics, Inc.*,
No. 98 Civ. 1380(LBS), 1999 WL 527970 (S.D.N.Y. July 22, 1999)....................8

*James v. N.Y. Racing Ass'n*,
76 F. Supp. 2d 250 (E.D.N.Y. 1999)....................4

*Libront v. Columbus McKinnon Corp.*,
832 F. Supp. 597 (W.D.N.Y. 1993) ....................10

*Mattera v. JPMorgan Chase Corp.*,
740 F. Supp. 2d 561 (S.D.N.Y. 2010)....................5

*McCaskill v. ShopRite Supermarket*,
No. 7:13-CV-00238(BKS), 2015 WL 419658 (N.D.N.Y. Jan. 30, 2015)....................8

*Mitchell v. Metro. Trans. Auth. Capital Constr. Corp.*,
No. 16 Civ. 3534(KPF), 2018 WL 3442895 (S.D.N.Y. July 17, 2018)....................4

*Siano v. Haber*,
40 F. Supp. 2d 516 (S.D.N.Y. 1999)....................4

**CASES** **PAGE(s)**

*Skiff v. Colchester Bd. of Educ.*,
514 F. Supp. 2d 284 (D. Conn. 2007) ....................8

*Soderberg v. Gunther Int'l, Inc.*,
124 F. App'x 30 (2d Cir. 2005) ....................3

*Williams v. N.Y.C. Trans. Auth.*,
No. 10-CV-882 (CLP), 2014 WL 11474810 (E.D.N.Y. Sept. 16, 2014), *aff'd*, 620 F. App'x 63 (2d Cir. 2015) ....................9

*Zeller v. Pathmark Stores, Inc.*,
No. 00 Civ. 8216(DLC), 2001 WL 1196196 (S.D.N.Y. Oct. 10, 2001) ....................5

## PRELIMINARY STATEMENT

Notwithstanding Plaintiff's[1] efforts to avoid summary judgment through obfuscation and misstatement of the record, Plaintiff has been utterly unable to dispute the critical facts supporting the conclusion that his employment was terminated solely due to his inadequate performance and hostile and uncooperative attitude. (Mem. of Law in Supp. of Def.'s Mot. for Summ. Judg. ("Def. Mem.") pp. 5-9.)

Plaintiff has not refuted the following dispositive facts which establish that his termination was not motivated by age in *any respect*: Plaintiff was hired at the age of 43 by Kay who was 61 years old at the time. (Pl.'s Resp. to Def.'s Local Civ. Rule 56.1 Stmt. of Material Facts ("56.1 Opp.") ¶¶ 13-14.) When Plaintiff was terminated in 2015 at the age of 61 by Kay, Shechtman, and Woldenberg, they were 79 years old, 68 years old, and 59 years old respectively. (*Id.* ¶¶ 112-13.) At that time, almost 20% of the Firm's attorney population was 60 years old or older. (*Id.* ¶ 119; Decl. of Valdi Licul ("Licul Decl.") at Ex. 13.) Between 2001 through August 2017, the average age of the 21 attorneys who were involuntarily terminated by Pryor was 38.7 years old. (56.1 Opp. ¶ 116.) Pryor has no retirement policy as it considers such requirements as "inconsistent with [the Firm's] entrepreneurial identity," and until Laufer's claim, Pryor concededly had never before been subject to any complaint of age discrimination, neither formally nor informally, since its founding in 1963. (*Id.* ¶¶ 128; 130.)

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO SET FORTH SPECIFIC FACTS EVIDENCING A GENUINE ISSUE FOR TRIAL

As detailed within Defendant's moving papers, Plaintiff was terminated because he was a

[1] Defined terms shall have the same meaning as those in Pryor's Memorandum of Law in Support of its Motion for Summary Judgment and Statement of Undisputed Material Facts Pursuant to Local Rule 56.1.

limited attorney whose performance and attitude deteriorated significantly leading up to his termination. (Def. Mem. pp. 5-9.) Kay, who primarily supervised Laufer's work, had a difficult relationship with Laufer throughout much of Laufer's employment with the Firm. (Pryor 56.1 ¶ 95.) Kay found Laufer to be robotic in his interactions with clients; insensitive to family dynamics and other difficult issues; lacking in tact and empathy; lacking in inventiveness in the estate planning arena; and disrespectful. (*Id.* ¶¶ 27-28.) Woldenberg "had concerns regarding Laufer's drafting, research, writing abilities, thoroughness . . . creativity, [and] lack of communication skills." (*Id.* ¶ 37.) He did not view Laufer as a "well-rounded, exemplary Associate," and, in fact, found him to be unresponsive with "barely adequate technical abilities." (*Id.* ¶¶ 39-40.) Shechtman believed that Laufer "came across as awkward, uncomfortable in social and professional situations, and inarticulate" about certain legal issues. (*Id.* ¶ 32.)

Plaintiff does not and cannot materially dispute these reasons for his termination. In fact, Plaintiff flatly admits that in 2014, the year Pryor decided to terminate his employment, Kay became "increasingly agitated" with him, and that he would respond to Kay's advice with unresponsive silence. (56.1 Opp. ¶¶ 95; 97.) Plaintiff further admits that (i) he and Kay had arguments and that Kay would "yell" and "talk down" to him; (ii) he and Kay "disagreed" on matters; (iii) Kay found him to be stubborn and inflexible; and (iv) Woldenberg was "upset" with him due to a matter involving a "springing" power of attorney. (*Id.* ¶¶ 89; 95-96; 103.) In short, Plaintiff admits he had a deteriorating relationship with his direct superiors, and his unsupported assertions that these issues were not his fault do not help his case. (*Id.* ¶¶ 89; 95; 103; Def. Mem. pp. 16-17.)

Furthermore, Plaintiff asserts that since 2007, when he was 53 years old and Shechtman was 60 years old, Shechtman wanted to terminate his employment. (56.1 Opp. ¶¶ 10; 45; 176.)

According to Laufer, although he was hired at the age of 43, the Firm was discriminating against him on the basis of his age when he was 53 years old. (*Id.* ¶ 176.) Laufer's theory that the Managing Partner of the Firm was animated by age animus against him but did not act on this animus for over eight years is completely illogical. In fact, Plaintiff's theory of discrimination throughout this litigation has been inconsistent and contradictory.[2]

**A. Plaintiff's Immaterial And Unsupported Assertions Are Insufficient To Survive Summary Judgment**

In the face of uncontradicted record evidence reflecting Shechtman, Woldenberg, and Kay's dissatisfaction with his performance and attitude, Plaintiff can claim only that he never received notice of these reasons for his termination. (56.1 Opp. ¶¶ 27, 37; 39-40; 62; 67; 70-73; 75-76; 79-84; 91-92; 94; 199; 223; 237; 242.) However, Plaintiff did receive notice of his deficiencies in the most meaningful and material manner. Plaintiff admits that his compensation was frozen beginning in 2010. (*Id.* ¶ 64.) From 2010 until he was terminated in 2015, Plaintiff's salary was increased from $186,000 to $190,000. (*Id.*) Plaintiff asked to be considered for a promotion twice—in 2008 and in 2013. (*Id.* ¶¶ 177-78.) He was rejected on both occasions. (*Id.*) Moreover, in Plaintiff's own words, his direct supervisor would "yell" at him. (*Id.* ¶ 95.) Plaintiff was thus given direct notice of his unsatisfactory performance, which he clearly understood given that he began looking for another job following these rejections. (Def. Mem. p. 4.)

Moreover, assuming, *arguendo*, that Plaintiff somehow failed to comprehend that these rebuffs were an assessment of his performance, courts in the Second Circuit have regularly held that lack of notice does not amount to pretext. *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30,

[2]Laufer alleges in the Complaint that Pryor began discriminating against him in or around 2010 as he approached 60 years old. (Compl. ¶¶ 2, 25.) However, during his deposition, Laufer testified both that (i) he was discriminated against on the basis of his age "from the time [he] was hired [by the firm in 1997 at the age of 43] until the time [he was] terminated in 2015; and (ii) he was discriminated against on the basis of his age from around 2004 when he was 50 years old. (Licul Decl. at Ex. 3 (at 67:16-21; 207:12-208:2.).) Now, according to his opposition papers, Plaintiff was discriminated against "from the time Shechtman became . . . Managing Partner in 2007." (56.1 Opp. ¶ 176.)

32 (2d Cir. 2005) (no pretext even where employer failed to "document its concerns until . . . the day [plaintiff] was terminated . . ."); *Siano v. Haber*, 40 F. Supp. 2d 516, 518 (S.D.N.Y. 1999). Indeed, even where, upon termination, an employer does not notify the employee being terminated of his or her performance issues that triggered the termination but instead informs him or her that it is "going to go in a different direction," such a statement is not viewed by courts as evidence of age discrimination.[3]

*i. Plaintiff's Subjective Evaluation Of His Performance Is Immaterial And Should Be Disregarded*

Plaintiff claims based on his own subjective judgment and no record evidence that he drafted "complex wills, trusts, agreements and other estate planning documents," "worked on litigated matters [with] little to no supervision," "was always respectful towards" his direct supervisor (56.1 Opp. ¶¶ 95; 141; 143),[4] and "brought in significant originations to the Firm." (*Id.* ¶ 148.) Nevertheless, the Firm allegedly "treated [him] worse than his younger associate counterparts." (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. Judg. ("Opp. Mem.") p. 20.) First, Plaintiff's evaluation of his own performance is immaterial. As the Second Circuit has held, it does not matter whether the Firm's perception of Laufer was accurate, what matters is whether the Firm's explanation that it terminated Laufer due to his attitude and performance is pretextual since courts should not "sit as a super-personnel department to reexamine whether an employee's performance was really deficient . . . ." *Ghent v. Moore*, 324 F. App'x. 55, 57 (2d Cir. 2009) (citations omitted); *Ghorpade v. MetLife, Inc.*, No. 14-CV-4379 (JPO), 2016 WL 3951183, at *6 (S.D.N.Y. July 20, 2016).

Second, multiple partners and counsel with whom Laufer worked submitted declarations

---

[3] *Mitchell v. Metro. Trans. Auth. Capital Constr. Corp.*, No. 16 Civ. 3534 (KPF), 2018 WL 3442895, at *7 (S.D.N.Y. July 17, 2018); *Cooper v. N.Y. Dep't of Labor*, No. 14-CV-0717 (GTS/CFH), 2015 WL 5918263, *2 (N.D.N.Y. Oct. 9, 2015); *James v. N.Y. Racing Ass'n*, 76 F. Supp. 2d 250, 253 (E.D.N.Y. 1999).

[4] Notably, these statements are merely supported by Laufer's own declaration and his Firm profile, which he drafted.

sworn to under penalty of perjury attesting to his inadequacies and misfeasance (Def. Mem. pp. 9; 12-15), which cannot be disregarded simply based on Plaintiff's bare assertions to the contrary. *Desir v. Board of Co-op. Educ. Servs. (BOCES) Nassau County*, 803 F. Supp. 2d 168, 176 (E.D.N.Y. 2011). While Plaintiff baldly asserts that a number of these attorneys are altering their prior testimony and perjuring themselves due to their "self-interest," this notion is completely unfounded. (56.1 Opp. at ¶¶ 60; 80; 95; Opp. Mem. p. 17.) None of the Firm attorneys' declarations contradict prior sworn testimony, they merely expand upon prior testimony at times, often due to Plaintiff's counsel's failure to exhaust his questioning during the attorneys' depositions. *Zeller v. Pathmark Stores, Inc.*, No. 00 Civ. 8216 (DLC), 2001 WL 1196196, at *1 n.1 (S.D.N.Y. Oct. 10, 2001). For example, Woldenberg is hardly executing "an eleventh-hour declaration [attempting] to alter his sworn testimony" regarding his view of the Firm's decision to freeze Laufer's salary since he was <u>never asked</u> during his deposition about his view of this decision.[5] (56.1 Opp. ¶ 60; Licul Decl. at Ex. 4.) Laufer also claims that the nine declarations from Pryor's attorneys are immaterial because no contention was made that their critiques were factors in his termination. (Opp. Mem. p. 17.) However, it is clear that many of the declarants did in fact share their views with the decision makers (Licul Decl. at Ex. 2 (15:24-20:21; 28:12-29:10)), and that these statements confirm and corroborate the negative perception of Laufer held by the decision makers. *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 577 (S.D.N.Y. 2010) ("Even *post-termination* recognition of certain aspects of an employee's performance does not, by itself, cast doubt on an employer's decision to terminate an employee . . . .").

[5] Plaintiff's inadvertent or deliberate failure to ask certain questions or exhaust a line of questioning cannot form the basis to create a purported issue of disputed material fact. Notably, whenever Plaintiff asserts that an individual did not make a particular claim or statement during his/her deposition, this actually means that the individual was never asked. For example, Plaintiff asserts that "[a]t his deposition, Kay did not claim that he and Laufer had loud arguments" (Opp. Mem. p. 19), however, Kay was <u>never asked</u> whether he had arguments with Laufer. (Licul Decl. at Ex. 1.) Plaintiff also claims that Landauer "did not claim that she was hired to supervise Laufer's work" (56.1 Opp. ¶ 46), however, she was <u>never asked</u> if she supervised Laufer's work. (Licul Decl. at Ex. 5.)

Third, Laufer's work on litigation matters and his originations are immaterial. While Laufer lauds his litigation experience and CPA credential, and claims that these factors make his replacement less qualified than him (Opp. Mem. p. 11),[6] the truth is that Laufer was not hired as a litigator, nor did the Firm wish him to perform either a litigation or an accounting function. Pryor is a full-service law firm with a litigation department of 55 attorneys and does not offer accounting services. (Decl. of Ronald H. Shechtman in Further Supp. of Def.'s Mot. for Summ. Judg. ("Shechtman Decl.") ¶ 2.) Moreover, Plaintiff has acknowledged that his litigation work at Pryor was very limited – comprising about 10-20% of his time. (Licul Decl. at Ex. 3 (at 235:15-236:11).) As for Plaintiff's originations, Pryor has never alleged that Plaintiff's business development had any bearing on his termination, and Shechtman was not impressed with the nature or consistency of his originations. (*See id.* at Ex. 2 (at 76:15-77:11).) Critically, Laufer admits that "the [F]irm is content to make people [P]artners and keep people [P]artners here as they turn 40, 50, 60, 70, and 80" as long as they "are able to bring in business" and "justify their keep" (*id.* at Ex. 3 (at 218:13-219:4)), conceding his recognition that he did not "justify [his] keep." (*Id.*)

*ii. Plaintiff's Assertions Regarding His Alleged Discriminatory Treatment At The Hands Of The Firm Are Immaterial And Should Be Disregarded*

Laufer's litany of disputed statements regarding Pryor's alleged discriminatory treatment of him are similarly immaterial and baseless. Plaintiff claims that he was subjected to discriminatory treatment because he was (i) not assigned "a class year tied to his year of

[6] Laufer was replaced by David Spacht, a fourth-year Associate. (56.1 Opp. ¶ 109.) Pryor did not save any money by replacing Laufer with Spacht. (*Id.* ¶¶ 64; 110.) Despite Plaintiff's allegation to the contrary, Defendant did not attempt to "hide" that it replaced Laufer with Spacht through its Answer to Plaintiff's Complaint. (Opp. Mem. p. 16.) Plaintiff's Complaint alleges that "Laufer was replaced days [following his termination] by an associate in his early thirties," which is untrue. (Compl. ¶ 2.) As Plaintiff admits, Spacht accepted an offer to join Pryor as a Trusts & Estates Associate on June 29, 2015, a month prior to Plaintiff's notice of termination on July 28, 2015 and a month and a half prior to Plaintiff's last day in the office on August 14, 2015. (*Id.* ¶¶ 109; 111; Licul Decl. at Ex. 30.)

graduation;" (ii) not provided any annual performance review even though Pryor "usually" conducted them annually;[7] (iii) not promoted even though one of his supervisors "did not oppose" his promotion; (iv) not "given access to the Firm's marketing department;" (v) subjected to discriminatory comments; and (vi) treated differently than [REDACTED], [REDACTED], and [REDACTED], who he identifies as comparators. (Opp. Mem. pp. 3-4; 12-14; 56.1 Opp. ¶¶ 17; 165-66; 178-79; 252-56; 260-62.) As detailed in Pryor's moving papers, Plaintiff was the first and only Associate to join the Firm 19 years after law school. (Pryor 56.1 ¶ 18.) There was no such class year or anything approaching it then or now. (*Id.*) Laufer was unique.

Pryor also did not "usually" conduct performance reviews for Associates annually during Laufer's employment. Attorneys are "given reviews in the daily interchange of doing legal work . . . where an [A]ssociate will work directly with a [P]artner on a virtually full-time basis." (Licul Decl. at Ex. 2 (at 56:19-22).) This is especially true "in a department [like Trusts & Estates] where there's only one associate . . . ." (*Id.* at 57:16-21.) Moreover, while Plaintiff asserts that Woldenberg "did not oppose" Laufer's promotion (56.1 Opp. ¶¶ 44; 66; 178), he conveniently omits the more relevant fact that on both occasions when Laufer asked to be promoted—in 2008 and 2013—Woldenberg did not recommend or endorse his promotion. (Licul Decl. at Ex. 4 (at 59:10-60:19; 64:25-65:15); Pryor 56.1 ¶¶ 41; 68.) Woldenberg thought that Laufer should not have been promoted on either occasion due to his "weak communication skills, internally and with clients, unresponsiveness, barely adequate technical abilities, and demonstrated inability to develop business consistently." (Pryor 56.1 ¶¶ 40; 67.)

As for Laufer's remaining immaterial contentions, Pryor's marketing department is available to all of the Firm's attorneys, and Laufer does not and cannot allege that at any time he

---

[7] The Associate Handbook cited by Plaintiff in support of this assertion is dated August 2015, which is subsequent to Plaintiff's notice of termination date. (56.1 Opp. ¶ 166.)

was stopped from utilizing Pryor's marketing resources. To the contrary, he concedes that he "did not speak up" to "anybody in the firm or in the marketing department" to "say that [he] would like to write." (Licul Decl. at Ex. 3 (at 100:9-21).) With respect to Pryor's allegedly discriminatory comments, the cases that Plaintiff cites to in support of his argument that Pryor "disparaged Laufer in age-specific ways" are largely outside of the Second Circuit (Opp. Mem. pp. 12-13), and the only Second Circuit cases cited by Plaintiff do not support the conclusion that the terms "inflexible," "stubborn," and "curmudgeon" are always associated with age-animus. In fact, these are generic terms that are used to describe individuals irrespective of their age, and can form a legitimate, non-discriminatory basis to terminate someone's employment. *Hauptman v. Concord Fabrics, Inc.*, No. 98 Civ. 1380 (LBS), 1999 WL 527970, at *2 (S.D.N.Y. July 22, 1999) (granting defendants' motion to dismiss plaintiff's claim of age-based discrimination where defendant found plaintiff to be "stubborn"); *Skiff v. Colchester Bd. of Educ.*, 514 F. Supp. 2d 284, 300-301 (D. Conn. 2007) (plaintiff being described as "unwilling to change," "inflexible," and having "difficulty taking criticism" was insufficient to show pretext for age discrimination.)[8]

Lastly, neither   nor   are Laufer's comparators so the purported "very essence" of Plaintiff's claim must fail. (Opp. Mem. p. 20.) According to Plaintiff,  and  are his comparators because Pryor also deemed them to have low billable hours in 2011. (56.1 Opp. ¶¶ 256; 260-262.) Plaintiff falsely claims that  is Laufer's comparator because he is "one of Laufer's substantially younger fellow [A]ssociates." (Opp. Mem. p. 22.) Even if the Court adopts Plaintiff's definition of a comparator, *i.e.*, someone with "a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may

---

[8] In fact, Laufer admitted that his direct supervisor never said anything to him "that intimated that age was a concern for him." (Def. Mem. p. 20.) *See McCaskill v. ShopRite Supermarket*, No. 7:13-CV-00238 (BKS), 2015 WL 419658, at *6 (N.D.N.Y. Jan. 30, 2015) (plaintiff cannot create an issue of fact as to whether a discriminatory comment was made by contradicting prior testimony).

be attributable to discrimination," ███ ████ and ███ still do not qualify as comparators. (*Id.*) While the Firm considered reducing or freezing the salaries of ███ (an Associate in the Corporate Department at the time), ████ (an Associate in the Executive Compensation, ERISA & Employee Benefits department at the time), and Laufer due to their low billable hours in 2011 (Licul Decl. at Ex. 18), Laufer was not terminated until *four years later in 2015* for his poor performance and attitude. (56.1 Opp. ¶ 111; Def. Mem. pp. 5-9.) ███ is similarly not Plaintiff's comparator as, contrary to Plaintiff's assertion, he is not one of Laufer's fellow Associates. ███ joined the Firm as a lateral *Partner* in 2013. (56.1 Opp. ¶ 50; Licul Decl. at 2 (at 81:14-82:5).) Furthermore, courts generally consider whether individuals are in the same department, have the same supervisor, and have the same position when determining whether they are comparators. (Def. Mem. pp. 19-20.)

**B. Plaintiff's Distortion Of The Record Does Not Create A Disputed Material Issue Of Fact**

In addition to Plaintiff's immaterial and unsupported assertions, he also makes numerous misrepresentations of the record in an attempt to create a genuine issue for trial. For example:

- While Plaintiff asserts that "Shechtman's goal was to promote younger attorneys" and that he "did not fit into those plans" (56.1 Opp. ¶ 171; Opp. Mem. p. 1), in truth, Shechtman stated in response to a question from the New York Law Journal about succession planning that the Firm "is actively engaged in developing the next generation of leaders . . . and [is] considering how [the Firm's] leadership structure will evolve." (Licul Decl. at Ex. 25.)[9]

- While Plaintiff claims that Woldenberg "could not specify any part [of a memorandum prepared by Laufer in November 2014] that was incomplete or incorrect" (56.1 Opp. ¶ 94), in truth, Woldenberg testified that he did not think the memo was "fully researched" (*id.* at Ex. 4 (at 126:20-22)) because there were "case law [and] rulings to the contrary from the [IRS], which were not cited . . . which would lead to potentially a different conclusion" (*id.* 129:22-130:3) and some "additional law on the topic that was not addressed." (*Id.* 131:14-25.)

[9] Courts in the Second Circuit have regularly held that succession planning does not constitute pretext. *Chapotkat v. Cty. of Rockland*, No. 11-CV-6209 (NSR), 2014 WL 1373531, at *7 (S.D.N.Y. Apr. 4, 2014), aff'd, 605 F. App'x 24 (2d Cir. 2015); *Duckett v. Foxx*, No. 12-CV-5203 (NGG) (LB), 2015 WL 4911160, at *9 (E.D.N.Y. Aug. 17, 2015), aff'd, 672 F. App'x 45 (2d Cir. 2016); *Williams v. N.Y.C. Trans. Auth.*, No. 10-CV-882 (ENV) (CLP), 2014 WL 11474810, at *5 (E.D.N.Y. Sept. 16, 2014), aff'd, 620 F. App'x 63 (2d Cir. 2015).

- While Plaintiff asserts that Landauer only testified about a "single incident" regarding Laufer (Opp. Mem. p. 18; 56.1 Opp. ¶ 79), she also testified about (i) having to "prod[]" Laufer about the status of a matter; (ii) being "frustrated from time to time" with him; (iii) having to reduce his time on a bill; (iv) his general objection to the use of her forms; and (v) a research assignment in which he gave her an answer that "didn't sound right to [her]" and having to find the answer herself. (Licul Decl. at Ex. 5 (at 47:24-49:20; 43:15-22; 16:7-20; 12:24-25).)

- While Plaintiff claims that "Shechtman admitted that he did not have a basis to judge Laufer's legal abilities" (Opp. Mem. p. 19), Shechtman actually testified that he "indirectly" supervised Laufer in connection with Doctors Council clients and found his work "not satisfactory." (Licul Decl. at Ex. 2 (at 110:15-111:12; 112:14-18).)

- While Plaintiff claims that "Kay admitted that Laufer did not refuse to check his email on weekends" and that the Firm "falsif[ied] Laufer's personnel file" (56.1 Opp. ¶ 195; Opp. Mem. p. 1), in actuality, Kay testified that Laufer told him that he "do[es] not check [his] e-mails on the weekend" and that Kay was "annoyed" by this response and found it inadequate. (Licul Decl. at Ex. 1 (180:17-19; 188:19-189:10).) Kay then reported Laufer's misconduct to Oris Diaz, Pryor's Director of Human Resources, to simply document the occurrence.[10] (*Id.* at 181:17-19.)

### C. Defendant's Demographics Disprove Any Claim Of Age Discrimination

Not only do Plaintiff's immaterial statements and distortions of the record fail to establish a genuine issue of fact for trial, Plaintiff does not refute that Pryor's demographics disprove any claim of discrimination. In 2015, the year Laufer's employment was terminated, the Firm had 134 attorneys. (Pryor 56.1 ¶ 117; Licul Decl. at Ex. 13.) Of these 134 attorneys, 20 attorneys were in their 60s, 4 were in their 70s, and 2 were in their 80s. (Pryor 56.1 ¶ 118; Licul Decl. at Ex. 13.) The average age of the heads of the Firm's major departments is presently 61.5 years old, the same age as Laufer at the time he was terminated. (Shechtman Decl. ¶ 3; Licul Decl. at Ex. 13;[11] 56.1 Opp. ¶ 112.)

## CONCLUSION

Pryor respectfully requests that the Court grant summary judgment in its favor.

[10] Kay's report was not false and Plaintiff has failed to set forth any evidence that the report was manufactured. *Libront v. Columbus McKinnon Corp.*, 832 F. Supp. 597, 628 (W.D.N.Y. 1993) (holding that plaintiff "has failed to produce any evidence that the performance evaluation was manufactured in an attempt to justify her layoff, and that her layoff was motivated by age").

[11] Since this chart setting forth the ages of attorneys at the Firm in 2018 was produced, multiple attorneys have celebrated birthdays and are therefore one year older as detailed in the Shechtman Decl.

Dated: New York, New York
October 17, 2018

PRYOR CASHMAN LLP

By: /s/ LaKeisha M.A. Caton

Joshua Zuckerberg (jzuckerberg@pryorcashman.com)
Gideon Cashman (gcashman@pryorcashman.com)
LaKeisha M.A. Caton (lcaton@pryorcashman.com)
*Attorneys for Defendant Pryor Cashman LLP*